# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

| | |
|---|---|
| MERCY HEALTH SERVICES-INC, MERCY HEALTH SERVICES-IOWA, CORP., d/b/a MERCYONE SIOUXLAND MEDICAL CENTER, | No. 21-CV-4052-CJW-KEM |
| Plaintiffs, | **ORDER** |
| vs. | |
| STILIANOS EFSTRATIADIS, M.D., | |
| Defendant. | |

_____

This matter is before the Court on plaintiffs' Motion for Preliminary Injunction. (Doc. 4). Defendant timely resisted (Doc. 15) and plaintiffs timely replied to the resistance (Doc. 20). The Court held oral argument on December 20, 2021. (Doc. 21).

For the following reasons, the Court **grants** plaintiffs' motion. In the interest of justice, the Court issues this order to announce its decision. An additional order with more comprehensive analysis will follow.

## I.     ANALYSIS

Before beginning its analysis, the Court must address Stilianos Efstratiadis, M.D. ("defendant")'s argument that Mercy Health Services-Iowa, Corp. d/b/a MercyOne Siouxland Medical Center ("MercyOne" or "Hospital") is an inappropriate plaintiff. (Doc. 17, at 6). The Court's order focuses on plaintiff Mercy Medical Services, Inc. ("Mercy Clinic"), an undisputed party to defendant's employment contract ("Employment Agreement"). The Court finds that it need not decide at this stage of the litigation whether MercyOne is a proper party to this suit, nor need it decide whether

MercyOne will suffer damages, irreparably or otherwise, if the Court does not enter a preliminary injunction. As described below, the Court finds that the Mercy Clinic demonstrates a need for a preliminary injunction. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). Because the absence of irreparable harm would be fatal to a motion for preliminary injunction, the Court will first address the threat of irreparable harm. The Court will then discuss the remaining *Dataphase* factors. *See* 640 F.2d at 114.

### A. *Irreparable Harm*

The Court finds that Mercy Clinic will suffer irreparable harm absent a preliminary injunction. By advertising his services to his "existing patients" (Doc. 20-1, at 2), defendant is soliciting patients to leave the Mercy Clinic. Defendant's last day of employment at the Mercy Clinic was November 13, 2021. (Docs. 6-3, at 1; 17-1, at 13). As of November 29, 2021, at least ten Mercy Clinic patients requested transfer of their records to defendant's new clinic. (Doc. 6, at 14). As of December 17, 2021, an additional thirty-nine patients had requested transfer of their records. (Doc. 20-1, at 20). This harm cannot be fully compensated by monetary damages, as defendant asserts. (Doc. 15-1, at 26). The Mercy Clinic invested heavily in advertising defendant's services and building his reputation in the area, which in turn grew defendant's practice. (Docs. 6-2, at 1–2; 20-1, at 17). That reputation and goodwill became the Mercy Clinic's reputation and goodwill while defendant worked in its employ. Defendant now exploits the goodwill he achieved with Mercy Clinic patients, at Mercy Clinic's expense, to compete with the Mercy Clinic and to solicit its patients. In doing so, defendant is undermining the Mercy Clinic's customer goodwill and reputation, and that loss extends beyond tangible profits. Indeed, this intangible loss is a form of irreparable harm. *See TrueNorth Cos., L.C. v. TruNorth Warranty Plans of N. Am., LLC*, 353 F. Supp. 3d

788, 800 (N.D. Iowa 2018) (citation omitted).  Thus, the Court finds irreparable harm is satisfied.

### B.     Likelihood of Success on the Merits

The Court finds that the Mercy Clinic is likely to succeed on the merits of its breach of contract claim because it has shown a "fair chance of prevailing" at trial.[1]  *See Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732–33 (8th Cir. 2008).  As a preliminary note, the parties do not dispute the Employment Agreement's validity.

First, the Mercy Clinic has a fair chance of prevailing on its patient solicitation claim.  Defendant sent mailers soliciting "follow up appointments" to "continue" cardiology services for his "existing patients" (Doc. 20-1, at 2), even though defendant's Mercy Clinic patients were the only local patients defendant had before opening his own practice.  (Doc. 6-2, at 1–2).  A total of forty-nine Mercy Clinic patients have now transferred their records to defendant's new clinic.  (Doc. 20-1, at 20).  Thus, the evidence shows at least a fair probability that defendant violated the Employment Agreement because he used mailings to "induce" patients to leave the Mercy Clinic.  (*See* Doc. 6-1, at 9 (Employment Agreement, Article X. Covenants, Section B. Patient Inducement)).

Second, the Mercy Clinic has a fair chance of prevailing on its noncompete claim.  Defendant does not dispute that he is providing cardiovascular services in a clinic setting within forty miles of his primary practice location under the Employment Agreement.  Further, while "primary practice location" is not defined in the Employment Agreement (*see* Doc. 6-1), the parties do not appear to dispute that defendant's primary practice

---

[1] As the Court mentioned at the preliminary injunction hearing, plaintiffs do not focus on defendant's alleged breach of his contract by inducing plaintiffs' employees.  Thus, the Court will not address this claim.

location was the Hospital, where the Mercy Clinic is located. (Docs. 6, at 2; 6-1, at 11; 17, at 33–36). (*See also* Employment Agreement, Addendum A – Services, Section I. Clinical Services). Instead, focusing on his administrative responsibilities at the Mercy Clinic, defendant asserts that his activity does not violate the noncompete clause because his work is not sufficiently similar to his work at the Mercy Clinic to constitute a "similar position" under the claim. (Doc. 17, at 33–36). But defendant's job description and payment history indicate that approximately ninety-five percent of his responsibilities under the Employment Agreement were clinic responsibilities and thus similar responsibilities he has in his new position as an interventional cardiologist working in a private cardiology clinic. (Docs. 6-1, at 1–2; 6-4, at 1–17; 6-5, at 1; 20, at 7–8; 20-1, at 1–2, 19). Thus, the evidence shows at least a fair probability that defendant violated the Employment Agreement by competing in a "similar position" by offering clinical cardiology services within forty miles of the Mercy Clinic. (*See* Doc. 6-1, at 9 (Employment Agreement, Article X. Covenants, Section C. Not to Compete)).

Thus, the Court finds the likelihood of success on the merits favors injunction.

### C.    *Balance of Harms*

The Court finds the balance of the harms favors injunction.[2] The Court begins by noting that the relevant harms are those that would result from issuance of an injunction— not the harms that have befallen the parties from other sources. Although defendant's employment opportunities may be complicated because he is under civil investigation by the Department of Justice (Doc. 17, at 28–29), this is not relevant to the Court's decision.

---

[2] Defendant argues that his practice benefits MercyOne by referring patients for procedures there. (Doc. 17, at 27). As discussed above, however, defendant argues that MercyOne is not a proper party and thus, for purposes of this motion, the Court should not consider the effects of defendant's behavior on MercyOne in determining irreparable harm. If that is so, then it is equally inappropriate for the Court to consider the possible benefit MercyOne may receive from referrals.

That complication is not the result of an injunction. In any event, it is largely speculative; defendant believes he will encounter difficulty obtaining privileges at another area hospital because of the pall of a civil investigation hanging over him, but he made no showing that he unsuccessfully attempted to do so.

No cognizable harm would befall defendant if the Court issues an injunction barring him from inducing patients away from the Mercy Clinic because he has no legal right to do so under the Employment Agreement. (*See* Doc. 6-1, at 9 (X. Covenants)). To be sure, defendant argues that he has not violated the Employment Agreement by inducing patients away from the Mercy Clinic. (Doc. 17, at 30–36). If that is so, then defendant should have no issue with an injunction prohibiting him from doing something he is not doing. In the preliminary injunction hearing, defendant countered by arguing that a court order would be duplicative of the Employment Agreement covenant. The Court disagrees. As the Court noted, the power of the Court's order extends beyond the Employment Agreement and its enforcement. Were defendant to violate this Court's order, contempt proceedings would follow. Defendant further argues that a court order would chill him from engaging in any conduct that may constitute an inducement of a patient away from the Mercy Clinic. That is as it should be when, as here, the Court finds that the Mercy Clinic is likely to prevail on the enforceability of the Employment Agreement covenant barring defendant from inducing patients away from the Mercy Clinic.

In contrast, harm would befall the Mercy Clinic if the Court decides not to issue an injunction. As above, the evidence shows that the Mercy Clinic has already lost forty-nine of its clients to defendant's clinic (Doc. 20-1, at 20) since he began soliciting existing patients with direct mailings (Docs. 6-5, at 1; 20-1, at 1–2), with thirty-nine clients transferring between the plaintiffs' motion and reply brief. (Docs. 6, at 14; 20-1, at 20). Further, because defendant does not believe he is breaching the Employment Agreement

(Doc. 17, at 30–36), it appears defendant will not cease this behavior absent the issuance of an injunction.

Further, the Mercy Clinic will suffer harm from defendant providing cardiology care in close proximity to the Mercy Clinic regardless of whether defendant induces patients away from the Mercy Clinic. As noted, defendant is trading on the reputation and goodwill that the Mercy Clinic helped him establish as part of his employment with the Mercy Clinic to now directly compete with the Mercy Clinic in its territory. In contrast, defendant can establish a cardiology clinic outside the forty-mile radius of the noncompete clause.

In sum, the Mercy Clinic's loss of patients, goodwill, and reputation are ongoing harms that weigh in favor of issuing an injunction. Thus, the Court finds the balance of harms favors injunction.

### D. Public Interest

The Court finds the public interest is a neutral factor. The state of Iowa has an interest in enforcing valid contracts and it is undisputed that defendant's employment agreement is valid. But it is also in the public interest that area residents have access to quality medical services, and it also appears undisputed that defendant is a respected and capable cardiologist.

Thus, the Court finds the public interest favors neither party.

## II. CONCLUSION

For these reasons, plaintiffs' Motion for Preliminary Injunction (Doc. 4) is **granted.**

Until November 13, 2022 or trial (whichever comes first), the Court prohibits defendant from directly or indirectly, whether as an individual, advisor, employee, agent or otherwise, taking any action to induce any patient to discontinue services from plaintiffs.

6

Until November 13, 2022 or trial (whichever comes first), the Court prohibits defendant from engaging in a similar position (meaning defendant cannot provide cardiology services or treatment) within forty miles of defendant's former primary practice location (the Mercy Clinic).

**IT IS SO ORDERED** this 22nd day of December, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa